UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
CLAIRE HANLEY, M.D.,

                 Plaintiff,

      -against-

NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION; KINGS
COUNTY HOSPITAL CENTER;
STATE UNIVERSITYOF NEW YORK
DOWNSTATE MEDICAL CENTER;
WAYNE J. RILEY, M.D. as President of
SUNY Downstate Medical Center;
DEBORAH L. REEDE, M.D. as Chair of
Radiology of SUNY Downstate Medical
Center and individually; PATRICK
HAMMILL, M.D. as Director of
Radiology at Kings County Hospital
Center and individually; and NEESHA
PATEL, M.D.,
                 Defendants.
-----------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1:19-CV-04246 (FB) (SJB)

*Appearances:*
*For the Plaintiff*:
MOLLY SMITHSIMON,
7 Times Square, 19th Floor
New York, NY 10022

*For the Hospital Defendants*:
LAURA C. WILLIAMS
Assistant Corporation Counsel for the
City of New York
100 Church Street, Room 2-102
New York, NY 10007

*For the SUNY Downstate Defendants:*
CLEMENT J. COLUCCI
Assistant Attorney General for the
State of New York
28 Liberty Street
New York, NY 10005

**BLOCK, Senior District Judge:**

In this age discrimination action, Defendants New York City Health and Hospitals Corporation ("NYCHHC"), Kings County Hospital Center ("KCHC"), Patrick Hammill, M.D. ("Dr. Hammill") and Neesha Patel, M.D. ("Dr. Patel") (collectively, the "Hospital Defendants") have moved for summary judgment. Defendants the State University of New York ("SUNY Downstate"), Wayne J. Riley, President of the State University of New York Downstate Health Science Center at Brooklyn ("Riley"), and Deborah L. Reede, Chair of SUNY Downstate's Department of Radiology ("Dr. Reede") (collectively, the "SUNY Downstate Defendants") have separately moved for summary judgment.

For the following reasons, Defendants' motions are GRANTED in part and DENIED in part.

## I.    BACKGROUND

The facts presented here, as well as those in the Discussion section, are taken from the pleadings, the parties' Rule 56.1 statements, and the supporting documentation. The facts are undisputed unless otherwise noted. The Court construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in that party's favor. *See LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005).

SUNY Downstate and NYCHHC maintain an agreement (the "Affiliate Agreement") whereby SUNY Downstate employs radiologists as academic staff subject to renewable term appointments and then recommends them for assignment as clinical practitioners at KCHC, a hospital owned and operated by NYCHHC. Plaintiff was employed pursuant to this agreement in 2002: She worked for SUNY Downstate as a Clinical Assistant Professor of Radiology under the supervision of the Chair of Radiology. She was assigned to work as a radiologist in the breast imaging department of KCHC under the Chief of Service for Radiology at KCHC. Plaintiff's employment at SUNY Downstate was conditioned upon her maintenance of her clinical position and privileges at KCHC.

Plaintiff alleges that, in 2017, Dr. Hammill, the Chief of Service for Radiology at KCHC, brought on his friend, Dr. Patel, to serve as the Director of Breast Imaging at KCHC. Plaintiff claims that Dr. Patel and Dr. Hammill then brought a series of false allegations against her of poor performance and substandard patient care, with the intention of terminating her employment to free her line of funding at the hospital for a younger practitioner. These allegations culminated in Dr. Hammill's recommendation to the KCHC Medical Board that Plaintiff not be reappointed to her clinical position at the hospital. The Medical Board followed Dr. Hammill's recommendation, and Plaintiff's clinical privileges

3

consequently expired.  She was approximately 70 years old at the time.  Hospital Defs.' Statement of Undisputed Facts ("SOF") at ¶ 22.  Doctors Hammill and Patel were approximately 47 and 40 years old, respectively.  *Id.* at ¶¶ 10, 15.

Following the expiration of Plaintiff's clinical privileges at KCHC, the Chair of Radiology at SUNY Downstate, Dr. Reede, recommended that Plaintiff not be reappointed to her academic position at the university.  Dr. Reede was approximately 67 years old at the time.  Pl.'s Dep. 168:13.  Plaintiff's employment at SUNY Downstate was subsequently terminated, effective December 20, 2019.

After Plaintiff's termination, Dr. Hammill hired a new breast imaging radiologist, Dr. Bustamante, to replace Plaintiff at KCHC upon Dr. Patel's recommendation.  Dr. Hammill estimated in his deposition that Dr. Bustamante was around 50 years old at the time when he was hired.  Pl.'s SOF at ¶ 5, Ex. D at 33.

Plaintiff's age discrimination claims are brought under 29 U.S.C. §§ 216, 626 ("ADEA"), *et seq.*, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  She also alleges denial of Procedural Due Process in violation of the Fourteenth Amendment under color of state law pursuant to 42 U.S.C. §1983.  She seeks damages and injunctive relief including reinstatement.

4

## II.   DISCUSSION

### a.  KCHC is Not a Suable Entity

As a preliminary matter, the Hospital Defendants are correct that, "[a]s a facility owned and operated by [NYC]HHC, [KCHC] may not be sued in its independent capacity."  *See Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 288 (S.D.N.Y. 2006) (citing (N.Y. City Charter ch. 17, § 396)).  All claims against KCHC are therefore dismissed.

### b.  SUNY Downstate and NYCHHC are Joint-Employers

The existence of an employer-employee relationship is a prerequisite for each of Plaintiff's statutory discrimination claims.  *See Frankel v. Bally, Inc.*, 987 F.2d 86, 88 (2d Cir. 1993) (ADEA); *Kilkenny v. Greenberg Traurig, LLP*, No. 5-civ-6578 (NRB), 2006 WL 1096830, at *4 (S.D.N.Y. Apr. 26, 2006) (NYSHRL and NYCHRL) (citing *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000)).  While the parties agree that SUNY Downstate had an employer-employee relationship with Plaintiff, Pl.'s SOF at ¶ 5, they dispute that one existed between Plaintiff and NYCHHC.

To establish joint liability between SUNY Downstate and NYCHHC, Plaintiff relies on the joint employer doctrine, *see Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 89 (2d Cir. 2005) (applying joint employer doctrine to ADEA claim), which permits a plaintiff to assert employer liability "against entities that are not

5

her formal, direct employer." *See Griffin v. Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016). Under this doctrine, a court may find a "joint employer relationship when two or more entities, according to common law principles, share significant control of the same employee." *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022) (emphasis omitted). The question is, essentially, whether the non-employer entity had the power to "pay an employee's salary, fire, or otherwise control the employee's daily employment activities, such that [a court] [could] properly conclude that a constructive employer-employee relationship exists." *Id.* at 844. "'[T]he element of control'" is the "crux" of this inquiry. *Id.* at 843 (quoting *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 371 (2d Cir. 2006)).

Here, the *Felder* factors plainly indicate that NYCHHC was Plaintiff's "joint employer." It is undisputed that NYCHCC controlled the "manner and means" by which Plaintiff performed her clinical duties at KCHC. *See Eisenberg*, 237 F.3d at 114 (recognizing that in common law agency analysis "the greatest emphasis should be placed on . . . the extent to which the hiring party controls the 'manner and means' by which the worker completes his or her assigned tasks") (cleaned up). These duties made up the majority of Plaintiff's day-to-day work, which was also subject to ongoing review by KCHC staff such as Dr. Hammill. Tellingly, although Plaintiff was formally paid by SUNY Downstate, NYCHHC reimbursed

the university for the portion of Plaintiff's compensation earned by her clinical work, which amounted to 95% of her salary.

In addition, although Plaintiff may have been formally hired by SUNY Downstate, her employment contract recommended her independent appointment to KCHC and made that appointment a necessary condition of her continued employment by SUNY Downstate. Whether or not Plaintiff's appointment at KCHC amounted to a constructive hiring by NYCHHC, the necessity of Plaintiff's clinical position at KCHC certainly meant that the staff there had the power to constructively fire her.

For these reasons, the Court holds that NYCHHC and SUNY Downstate were Plaintiff's "joint employers" under the Affiliate Agreement.

### c. Plaintiff's Discrimination Claims

Plaintiffs' age discrimination claims under the ADEA, the NYSHRL, and the NYCHRL are governed by the familiar three-part *McDonnell Douglas* burden-shifting framework. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

To succeed under this framework, a plaintiff must first establish a prima facie case of employment discrimination by showing: "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under

circumstances giving rise to an inference of discrimination." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 n.3 (2d Cir. 2021).  The burden on the Plaintiff at this stage is "minimal."  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

If a plaintiff successfully establishes a prima facie case, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action."  *United States v. Brennan*, 650 F.3d 65, 93 (2d. Cir. 2011) (quotation omitted).  If the employer does so, the burden then shifts back to the plaintiff to show that the employer's explanation was a pretext for age discrimination by identifying "inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons."  *See Drummond v. IPC International, Inc.*, 400 F. Supp. 2d 521, 528 (E.D.N.Y. 2005).

Finally, Plaintiff must also demonstrate, as a matter of causation, that there is a triable issue of fact as to whether age was the "but-for" cause of the adverse employment action.  *See Gorzynski*, 596 F.3d at 106 (discussing *Gross v. FBL Fin.*

8

*Servs., Inc.*, 557 U.S. 167, 177 (2009) ("[P]laintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action.")).[1]

As they have moved on distinct grounds, the Court will address the Hospital Defendants and the SUNY Downstate Defendants' arguments separately.

### 1. Hospital Defendants

#### i.   *Prima Facie Case*

The parties do not dispute that Plaintiff was in the protected group,[2] that she was qualified for her position, or that she suffered an adverse employment action. Plaintiff meets her burden on the final element — and therefore establishes a prima facie case — by providing evidence that she was replaced by two "significantly younger" workers, Doctors Patel and Bustamante, who were, respectively, 30 and

---

1 While NYCHRL discrimination claims also employ the *McDonnell Douglas* framework, *see Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75-76 (2d Cir. 2015), courts must analyze them separately and should construe the NYCHRL "liberally for the accomplishment of the uniquely broad and remedial purposes thereof." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). In practice this means that, at the third stage of the *McDonnell Douglas* analysis, a plaintiff need only show that a defendant's "stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on discrimination." *Ya-Chen Chen*, 805 F.3d at 76 (quotation omitted). In other words, a defendant will only be granted summary judgment on an NYCHRL claim if the record shows that discrimination played "*no* role" in the adverse employment action. *Id.* (citation omitted) (emphasis in original).

2 The protected group under the ADEA is people aged 40 or older, with no upward limit. 29 U.S.C. § 631(a). The NYSHRL prohibits age-based employment discrimination against anyone who is 18 or older. N.Y. Exec. Law § 296(3). The NYCHRL has no minimum age. N.Y.C. Admin. Code § 8-107(1).

20 years younger than Plaintiff at the relevant time.  *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000) ("[W]e have previously held that a plaintiff has demonstrated an inference of age discrimination and thus established a prima facie case . . . where the majority of plaintiff's responsibilities were transferred to a younger co-worker, and shortly thereafter some of plaintiff's other duties were transferred to a newly hired younger employee." (citing *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 105 (2d Cir. 1989))).

The Hospital Defendants argue that Plaintiff could not have been replaced by Dr. Patel because their roles contained different obligations.[3]  But this fails to rebut Plaintiff's case because there is no dispute that Dr. Patel's duties included Plaintiff's obligations, even if Dr. Patel's role was overinclusive.  *Compare* Hospital Defs.' SOF at ¶ 8 ("Plaintiff's duties at KCHC included, among other

---

[3] Plaintiff has moved for sanctions for spoliation of evidence upon the allegation that Defendants have not produced Dr. Patel's "UP-2" form.  This form is generated for employment status changes and would have shown whether Dr. Patel's position was temporary, probative to Plaintiff's claim that she was terminated to make space for Dr. Patel.  To the extent any ambiguities arise from this dispute, the Court draws them in Plaintiff's favor.  However, Plaintiff has not made a sufficient showing that the form in question was destroyed in anticipation of litigation, to the extent it was destroyed at all.  *Greenberg v. New York City Transit Auth.*, 336 F. Supp. 2d 225, 244 n.18 (E.D.N.Y. 2004).  Accordingly, Plaintiff's motion is denied without prejudice.

things, reading mammograms and performing procedures") *with* ¶ 17 ("Dr. Patel

was responsible for . . . reading and interpreting patient breast images").

There is also no dispute that Dr. Bustamante was hired to replace Plaintiff

after her termination.  Pl's Ex. D, at 33.  Although Dr. Hammill had to guess at his

deposition that Dr. Bustamante was "about 50," the Court draws the reasonable

inference that Dr. Bustamante was still significantly younger than Plaintiff.  *See*

*also Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 130 (2d Cir.

2012) (employer's review of replacement's "resume, which suggested that she was

in her early 30s, was sufficient . . . to create an issue of fact for the jury as to the

fourth element of [plaintiff's] prima facie case").

Plaintiff's prima facie case is bolstered by her allegation that Dr. Hammill

made a discriminatory remark when signing the reappointment credentialing

packet for Dr. Chaudary, who was 67 at the time: "Shouldn't she be retiring by

now?"  Hospital Defs.' SOF at ¶¶ 22, 163.  Generally, stray age-related remarks,

without more, "do not constitute sufficient evidence to make out a case of

employment discrimination."  *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d

Cir. 1998).  However, such remarks can support a plaintiff's case when

accompanied by "other indicia of discrimination" such that a jury could "conclude

that they bear a more ominous significance."  *Id.*

Here, the alleged remark was made by a decisionmaker about one of Plaintiff's colleagues who was only slightly younger than Plaintiff herself. Moreover, the remark "drew a direct link" between the practitioner's age and the viability of her continued employment, which is the heart of Plaintiff's discrimination claim.  *See Naumovski v. Norris*, 934 F.3d 200, 216 n.47 (2d Cir. 2019).  By itself, this remark would not be sufficient to raise an inference of discrimination, *Danzer*, 151 F.3d at 56, but given the additional indicia Plaintiff has already established the Court finds that the remark is probative and further supports Plaintiff's establishment of her prima facie case.[4]

Plaintiff also attempts to establish an inference of discrimination by virtue of disparate treatment.  Specifically, she argues that the other radiologists at KCHC were not subject to comparable discipline despite comparable professional errors. But this argument fails because the similarly situated employees Plaintiff relies on were not "outside h[er] protected group."  *See Ruiz v. Cnty. of Rockland*, 609 F.3d

---

4 The Hospital Defendants' retort that the statement is hearsay is of no moment — Dr. Hammill may be called as a witness at trial and his statement could be admissible as non-hearsay pursuant to Federal Rule of Evidence 801(d)(2)(D). *See, e.g.*, *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1238 n.1 (2d Cir. 1995) (admitting discriminatory double-hearsay statement that "concern[ed] a matter within the scope of [plaintiff's employment]" (citing Fed. R. Evid. 801(d)(2)(D))).

486, 493 (2d Cir. 2010).[5]  However this result is not dispositive because, as noted, Plaintiff has already met her burden.

The Court declines to draw the Hospital Defendants' requested "same actor" inference against Plaintiff's discrimination claims simply because Doctors Hammill and Patel, at ages 40 and 47 respectively, were within Plaintiff's protected class at the time of the alleged discrimination.  This inference is "permissive, not mandatory," *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 25 (E.D.N.Y. 2015), and is unpersuasive here where both Dr. Hammill and Dr. Patel were each more than 20 years younger than Plaintiff.  That Plaintiff was within the protected class when she was hired in 2002, *see* Hospital Defs.' SOF at ¶ 5, is similarly unpersuasive because Plaintiff was hired by different people, thereby negating any non-discriminatory inference.  *See, e.g.*, *Mace v. Marcus Whitman Cent. Sch. Dist.*, No. 11-CV-6574 (FPG), 2015 WL 5682665, at *10 (W.D.N.Y. Sept. 25, 2015), *aff'd*, 677 F. App'x 26 (2d Cir. 2017).

---

[5] Plaintiff's argument is not salvaged by her conclusory statement in a footnote that Dr. Roitberg was not disciplined for comparable professional errors as are levied against Plaintiff.  Absent any additional evidence that Plaintiff and Dr. Roitberg were similarly situated, this allegation is insufficient to raise an inference of discrimination.  *See Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) ([T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases.").

Nor does the Court find that Plaintiff's discrimination claim is fatally undermined because Dr. Hammill initially approved Plaintiff's application for renewal of her clinical privilege in March 2018 but then recommended to the KCHC Medical Board several months later that she should not be reappointed. Once again, the non-discriminatory inference here is "permissive, not mandatory," and, moreover, is typically "not a sufficient basis to grant summary judgment for the employer, at least when the employee has proffered evidence of pretext, as Plaintiff has done here." *See Collins v. Connecticut Job Corps*, 684 F. Supp. 2d 232, 251 (D. Conn. 2010). Plaintiff's proffer of Dr. Hammill's age-related remark creates at least a question of fact on the credibility of his non-discriminatory intent. *See Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir. 1994) ("A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue."). Simply, there is sufficient evidence in the record for a reasonable jury to conclude that Plaintiff's termination at KCHC was caused by age-discrimination.

For these reasons, Plaintiff has satisfied her minimal burden of establishing a prima facie case of age discrimination.

### ii.   *Legitimate Reasons*

Defendants meet their own minimal burden of proffering legitimate, non-discriminatory reasons to explain the Hospital Defendants' decision to terminate

Plaintiff's clinical privileges at KCH.  Namely, they assert that prior to the termination of her clinical privileges at KCHC, Plaintiff had performed poorly and subjected her patients to substandard care.  These reasons are sufficient to "rebut the presumption of age discrimination established by plaintiff's *prima facie* case." *Carlton*, 202 F.3d at 136.

### iii.    Pretext

Plaintiff sufficiently undermines the Hospital Defendants' legitimate reasons for terminating her to raise triable issues of fact.  *Drummond*, 400 F. Supp. 2d at 528.

Regarding Plaintiff's allegedly poor performance, Dr. Hammill and Dr. Patel cited several performance metrics as a basis for the suspension of Plaintiff's clinical privileges: (1) her above-average recall rates; (2) her practice of categorizing diagnostic mammograms; and (3) her alleged disregard for guidelines promulgated by Dr. Patel.  To rebut this, Plaintiff proffers expert testimony and non-expert testimony showing that her performance was within standard professional parameters, that it was consistent with the performance of other practitioners at KCHC, and that Doctors Hammill and Patel were incorrect to rely on these metrics as evidence of poor performance.  This evidence suffices to establish a triable issue of fact as to whether or not Plaintiff had "satisfactory job performance at the time of discharge."  *See Hawkins v. Astor Home for Children*,

15

No. 96 Civ. 8788, 1998 WL 142134, *4 (S.D.N.Y. Mar. 25, 1998) (citing *Thornley*

*v. Penton Pub., Inc.*, 104 F.3d 26, 29 (2d Cir. 1997)).

The same is true regarding the alleged patient issues that Dr. Patel reported

to Dr. Hammill, and subsequently, to the KCHC medical board.  For each of the

four patients that the Hospital Defendants rely on, Plaintiff identifies a legitimate

justification for her conduct and proffers evidence showing that her conduct was

within an applicable standard of professional care.  Consequently, she raises a

material question as to the validity of the Hospital Defendants' reliance upon these

alleged incidents as grounds to terminate Plaintiff's clinical privileges.

Taken together, Plaintiff's evidence of pretext and her allegations that she

was replaced by one or two significantly younger employees, at the direction of a

supervisor who allegedly made discriminatory remarks, cumulatively raise a triable

question of fact regarding whether age discrimination was a but-for reason for her

termination.  Namely, if Plaintiff can prove her case that the performance concerns

identified by Doctors Hammill and Patel did not create a legitimate basis to

terminate her, and if she can prove invidious discrimination based upon the

16

circumstances that she has cited, a reasonable jury could find that she was in fact terminated because of her age.[6]

> iv.   *Dr. Hammill and Dr. Patel May Be Liable as Aiders and Abettors Under the HRL Statutes*

The Hospital Defendants have additionally moved to dismiss Plaintiff's HRL claims against Dr. Hammill and Dr. Patel because Plaintiff has asserted aider and abettor liability against them based on their own discriminatory conduct. While some courts in this circuit have held that defendants cannot be liable as aiders and abettor for their own discriminatory conduct, "the weight of the authority tips decidedly in favor of allowing the aider and abettor claim to go forward." *See Beni v. New York*, No. 18- CV-615 (JMA) (ARL), 2019 WL 7598702, at *8 (E.D.N.Y. Aug. 19, 2019) (collecting cases), *report and recommendation adopted*, No. 18-CV-615 (JMA) (ARL), 2019 WL 4894243 (E.D.N.Y. Sept. 30, 2019).

While the Court concedes the logical appeal of precluding circular aider and abettor liability, the Second Circuit held in *Tomka v. Seiler Corporation*, 66 F.3d 1295 (2d Cir. 1995) *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), that defendants could be liable as aiders and abettors

---

6 Because Plaintiff has sufficiently defeated summary judgment on her ADEA and NYSHRL claims, the Court finds that Plaintiff's NYCHRL claims also survive under the less exacting standard.

under the NYSHRL, based on their own discriminatory conduct. *See id.* at 1317 (holding that an employee who "actually participates in the conduct giving rise to a discrimination claim," may be held liable under § 296(6)). For this reason, as a matter of law if not common sense, the Court joins the majority rule and declines to dismiss Plaintiff's aider and abettor claims. *E.g.*, *Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys.*, 588 F. Supp. 2d 419, 427 (E.D.N.Y. 2008) (holding that defendant "may be held liable for aiding and abetting allegedly unlawful discrimination by her employer even where her actions serve as the predicate for the employer's vicarious liability" because "until the Second Circuit revisits the issue, *Tomka* is the law in this circuit").

\* \* \*

For these reasons, the Hospital Defendants' motion for summary judgment on Plaintiff's discrimination claims is denied.

### 2.  SUNY Downstate Defendants

Plaintiff' discrimination claims against the SUNY Downstate Defendants do not survive because they are composed solely of a single stray remark by Plaintiff's supervisor, Dr. Reede.

### i.   *Prima Facie Case*

Plaintiff alleges that Dr. Reede told her, at a meeting to inform Plaintiff about SUNY Downstate's decision not to reappoint her to her academic position,

18

that older doctors should know when to retire, and that "they are sitting at conferences drooling" and "can't be reawakened." Pl's. SOF at ¶ 44. But Plaintiff proffers no "other indicia of discrimination" to indicate that the remarks bore "a more ominous significance." *See Danzer*, 151 F.3d at 56. Moreover, any discriminatory animus is undermined because Dr. Reede was approximately 67 years old when she made the remark, only three years younger than Plaintiff. *See, e.g.*, *Drummond*, 400 F. Supp. 2d at 532. Accordingly, this allegation alone is insufficient to make out a prima facie case of discrimination.

The same conclusion holds with respect to Plaintiff's NYCHRL claims against the Suny Downstate Defendants. *See, e.g.*, *Moore v. Verizon*, No. 13-CV-6467 (RJS), 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) (holding that age discrimination case based on stray remarks was not actionable under the NYCHRL). Indeed, as is abundantly clear from Plaintiff's briefing, her true discrimination claims lie against the Hospital Defendants.

Accordingly, Plaintiff's discrimination claims against the SUNY Downstate Defendants are dismissed. The Court additionally holds that the SUNY Downstate Defendants will not be derivatively liable for any discrimination committed by the Hospital Defendants because Plaintiff has not sufficiently alleged that the SUNY Downstate Defendants had knowledge of the underlying discriminatory conduct.

19

*See Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009) ("[W]hen a plaintiff establishes an entity's status as part of a joint employer, the plaintiff must still show that the joint employer knew or should have known of the discriminatory conduct[.]") (cleaned up).

### d. Deprivation of Procedural Due Process

Plaintiff has pled § 1983 claims for deprivation of due process against both the Hospital Defendants and the State Defendants.  Procedural due process claims under § 1983 for the termination of public employment involve a two-step inquiry: (1) whether the employee possessed a liberty or property interest associated with his or her employment and, if so, (2) what process they were entitled to before being deprived of it.  *Knights v. City Univ. of New York*, 639 F. Supp. 3d 395, 400 (E.D.N.Y. 2022) (citing *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002)).  Plaintiff alleges that she was deprived of both a liberty interest and a property interest.  Both claims are without merit.

### 1.  Plaintiff was not Deprived of a Liberty Interest

Plaintiff alleges that she was deprived of a liberty interest when her SUNY Downstate employment was terminated and "she was deprived of the right to clear her name," for which she suffered "a severe loss of personal and professional reputation."  Pl.'s Mem. of Law in Opp. to Motions for Summ. J. at 22.  She analogizes to the stigma-plus claim at issue in *Donato v. Plainview-Old Bethpage*

20

*Central School District*, 96 F.3d 623 (2d Cir. 1996), where the Second Circuit recognized that a "strongly negative[] evaluation," issued to a discharged employee, that read like a "bill of indictment," damaged the plaintiff's employments prospects enough to implicate a liberty interest. *Id.* at 631.

But governmental allegations of professional incompetence do not implicate a liberty interest in a stigma-plus context unless "they denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." *Id.* at 630-31.  Statements that "an employee merely performed a job poorly or acted in an improper manner [are] not sufficient." *Dingle v. City of New York*, 728 F. Supp. 2d 332, 346 (S.D.N.Y. 2010).

Here, Plaintiff can point to no "bill of indictment" that could imply the type of professional incompetence that the Second Circuit has recognized to implicate a liberty interest as a component of a stigma-plus claim.  She states only that she cannot seek employment given the "suspension, termination, and false allegations against her on record."  Pl.'s SOF at ¶ 45.  Read favorably, these cursory allegations cite to the performance-related concerns raised by Dr. Patel, Dr. Hammill, and the KCHC Medical Board in their notice of non-appointment.  But

these types of performance-related concerns were expressly disavowed in the very case that Plaintiff relies on. *See Donato*, 96 F.3d at 630 ("An employee charged with derelictions largely within her own power to correct is not deprived of such [a liberty] interest."). Accordingly, the Court finds that there was no deprivation of a liberty interest when Plaintiff's employment at SUNY Downstate was terminated.

## 2. Plaintiff was not Deprived of a Property Interest

Plaintiff also alleges that she was deprived of her property interest in her clinical staff appointment and privileges at KCHC. However, clinical privileges only create a property interest protected by the Due Process Clause where they are "guaranteed by state law." *See Greenwood v. New York, Off. of Mental Health*, 163 F.3d 119, 122 (2d Cir. 1998) (holding that the Due Process Clause was implicated in the termination of a plaintiff who had a "permanent" hospital appointment, which was "an entitlement under state law" pursuant to hospital bylaws). Plaintiff cites to no provision of the KCHC bylaws, nor can the Court find one, that entitles Plaintiff to reappointment as a right, thereby precluding her procedural due process claim at the first hurdle. *See Williams v. Woodhull Med. & Mental Health Ctr.*, 891 F. Supp. 2d 301, 3333 (E.D.N.Y. 2012) (ruling that plaintiff did not have a property interest in reappointment to medical staff at hospital administered by NYCHHC where bylaws contained "no provision . . . that provide[d] [her] with an entitlement to reappointment").

22

\*  \*  \*

For these reasons Plaintiff's procedural due process claims are dismissed.

## III.   CONCLUSION

For the foregoing reasons, the Hospital Defendants' motion for summary judgment on Plaintiff's discrimination claims is DENIED.  Their motion for summary judgment on Plaintiff's procedural due process claims is GRANTED.  The SUNY Downstate Defendants' motions for summary judgment on Plaintiff's discrimination and procedural due process claims are both GRANTED.

Accordingly, trial shall be held on Plaintiff's discrimination claims against the Hospital Defendants.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 22, 2024

23